Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3855 | **DATE** | 10/26/2001 |
| **CASE TITLE** | Broadmark Capital Corp. vs. Globalnet, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Broadmark's motion for judgment on the pleadings as to liability is granted, while GlobalNet's Rule 56 motion is denied. With those issues having been resolved, Broadmark is entitled to damages stemming from GlobalNet's breach of the Agreement. Because the exact extent of the investments made by Crescent remains unclear from the submission to this point, the ultimate scope of relief remains to be determined. A status hearing is set for November 7 at 8:45 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | deputy initials | 22 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | DOCKETING | 10/29/2001 | |
| SN | courtroom deputy's initials | 01 OCT 29 PM 3:44 | date mailed notice SN mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

BROADMARK CAPITAL CORPORATION, )
INC.,                          )
                               )
              Plaintiff,       )
                               )
     v.                        )   No. 01 C 3855
                               )
GLOBALNET, INC.,               )
                               )
              Defendant.       )

## MEMORANDUM OPINION AND ORDER

Broadmark Capital Corporation, Inc. ("Broadmark") has filed a diversity-of-citizenship breach of contract action against GlobalNet, Inc. ("GlobalNet").[1] Broadmark alleges that GlobalNet has refused to fulfill its obligations under the parties' December 18, 2000 letter agreement ("Agreement") relating to GlobalNet's search for added financing. According to Broadmark, a third party that it had introduced to GlobalNet later became a source of such funding, but GlobalNet has refused to compensate Broadmark according to the terms of the Agreement.

Broadmark has moved for judgment on the pleadings on the issue of liability under Fed. R. Civ. P. ("Rule") 12(c), and GlobalNet has both responded to that motion and filed its own Rule 56 cross-motion for summary judgment. With both motions having been fully briefed, they are ripe for disposition. For

---

[1] Broadmark is a Washington corporation with its principal place of business in Washington, GlobalNet is a Nevada corporation with its principal place of business in Illinois and the amount in controversy is far in excess of $75,000.

the reasons stated in this memorandum opinion and order, Broadmark's motion is granted while GlobalNet's is denied.

## Standards for Decision

Rule 12(c) motions, like those for summary judgment, are designed to achieve a resolution of claims on their merits. Unlike a summary judgment motion, however, Rule 12(c) permits consideration of only the complaint, the answer and written instruments attached as exhibits (Northern Ind. Gun & Outdoor Shows, Inc. v. South Bend, 163 F.3d 449, 452 (7th Cir. 1998)).

Familiar principles impose on movants under both Rule 12(c) (Northern Ind. Gun, 163 F.3d at 452) and Rule 56 (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)) the burden of establishing the absence of a genuine issue of material fact. For that purpose this court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., 116 F.3d 262, 265 n.2 (7th Cir. 1997)). And as Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999) has quoted from Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994):

> A genuine issue of material fact exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

Both parties agree that the choice of law provision in Agreement ¶17 calls for application of the laws of the State of

Washington (B. Mem. 6, G. Mem. 11). That does not necessarily resolve the choice of law issue, for a federal court sitting in diversity applies the conflict of laws rules of the forum state to determine the applicable substantive law. Here Illinois courts respect choice of law clauses such as that in the Agreement so long as "the law chosen is not contrary to Illinois's fundamental public policy" (<u>Fulcrum Fin. Partners v. Meridian Leasing Corp.</u>, 230 F.3d 1004, 1011 (7th Cir. 2000)).

Neither litigant has argued that the application of Washington law to the interpretation of the Agreement would violate the fundamental public policy of Illinois, and this Court independently finds no reason for so concluding. This opinion therefore looks to Washington law for the rules of decision.

## Facts

GlobalNet is an international voice, data and internet services provider, while Broadmark is an investment banking firm (G. St. ¶1-2).[2] In late October 2000 Broadmark first communicated with GlobalNet to determine whether the latter was interested in pursuing a merger with one of Broadmark's clients

---

[2] This opinion cites to GlobalNet's LR 56.1(a) statement of facts as "G. St. ¶--" and to Broadmark's response as "B. Resp. ¶--," although where a G. St. assertion is not controverted a citation to that statement ordinarily suffices. Those same "G." and "B." abbreviations are employed in referring to the parties' exhibits and memoranda.

(Valles Decl. ¶4).³ That inquiry came to a dead end by the end of November (id. ¶8).

Next, on December 7 Broadmark submitted a terms sheet to GlobalNet proposing a direct equity investment in GlobalNet by Crescent International Ltd. ("Crescent") (G. Ex. E). Less than two weeks later (on December 18) the parties entered into the five page single-spaced typewritten Agreement, under which Broadmark agreed to attempt on a nonexclusive basis to obtain capital for GlobalNet (Agreement at 1):

> through any legal means, including without limitation, the following (together, a "Transaction"): (1) equity financing, (2) debt financing, and (3) merger, acquisition, business combination, or purchase and sale of assets.

Under the Agreement (id. ¶1.a):

> If the Company [GlobalNet] consummates a Transaction involving equity financing or debt financing of any nature with a Party or Parties introduced to the Company through Broadmark within twenty four (24) months prior to the closing of such transaction, then the Company shall pay a fee to Broadmark....

Importantly, the Agreement defined the concept of an "introduction" by Broadmark this way (id. ¶2):

> For the purposes of this Agreement a party shall be considered to have been "introduced to the Company through Broadmark" if such a party was introduced to the Company by Broadmark, its agents or employees, or if the Transaction between the Company and such party

---

³ GlobalNet has provided a declaration by its Chief Financial Officer Pedro Valles as an unnumbered exhibit to its motion for summary judgment. That declaration is cited "Valles Decl. ¶--."

4

arose from or was made possible by Broadmark, its
agents or employees.

No immediate results were generated for GlobalNet during the next few weeks, and in early January 2001 GlobalNet entered into a letter agreement with another investment banking firm, J.P. Carey, Inc. ("Carey") to seek the placement of up to $15 million in shares to be sold by GlobalNet (Valles Decl. ¶17 and Ex. J). That agreement with Carey did not replace or terminate the Broadmark Agreement (which it will be recalled was nonexclusive), but under the circumstances that ensued that proves irrelevant to the issue of Broadmark's rights (see n.4).

Carey in turn then came up with a number of potential investors, including Crescent (Valles Decl. ¶18). After Crescent then invested $500,000 in GlobalNet (id.), it continued negotiations looking to a new debt investment in addition to that (id. ¶19). And in April Crescent purchased a $2 million debenture and made a $250,000 equity investment in GlobalNet (id. ¶20). Broadmark now contends that GlobalNet is liable for a fee under the Agreement because it first introduced Crescent to GlobalNet in December 2000.[4]

---

[4] For that purpose it is also irrelevant that GlobalNet has paid compensation to Carey for its role in the GlobalNet-Crescent transactions. In disputes of this type, which are based on contractual undertakings rather than on common law principles of "procuring cause," a principal simply cannot complain if it turns out to have obligated itself to pay commissions to more than one broker under the terms of different or successive brokerage agreements that it has voluntarily entered into.

5

## Broadmark's Motion

Broadmark contends that it is entitled to judgment on the pleadings because GlobalNet has admitted all of the elements of a breach of contract under Washington law: (1) there was a valid contract between the two parties, (2) the contract was breached and (3) the breach caused damages to Broadmark (see, e.g., Lehrer v. State of Washington, 5 P.3d 722, 727 (Wash. App. 2000)). To support that argument Broadmark directs attention to GlobalNet's Answer, in which GlobalNet admitted (1) the existence of the Agreement, (2) its December 2000 receipt of a terms sheet from Broadmark containing a proposal for up to a $20 million investment by Crescent in GlobalNet, (3) its having obtained financing from Crescent in early 1991 and again in April 2001 and (4) that, if Broadmark had indeed introduced Crescent to GlobalNet, GlobalNet would owe Broadmark compensation under the Agreement (B. Mem. 1).

GlobalNet responds by asserting that the December 7, 2000 terms sheet submitted by Broadmark did not qualify as an "introduction" of Crescent under the Agreement (G. Mem. 9-18). To that end GlobalNet argues that Broadmark has failed to demonstrate that Crescent was "ready, able and willing" to go forward with the investment at the time Broadmark submitted the terms sheet or that Broadmark was the "procuring cause" of the transactions that were ultimately consummated a few months later.

But that argument fails to address the controlling terms of the Agreement. What is totally absent from the Agreement is any requirement that an investor be "ready, able and willing" at the time of the introduction.[5] Nor does it require that Broadmark be a "procuring cause" of the ultimate investment. Instead the Agreement unambiguously anticipates exactly the type of "introduction" that occurred here--the earlier-quoted Agreement ¶2 states *in the disjunctive* the concepts of such an introduction on the one hand and, on the other hand, a GlobalNet Transaction (a defined term) that has been triggered by Broadmark's active participation. And of course the former alternative has an obvious purpose in any nonexclusive brokerage arrangement: It eliminates the possibility (all too familiar to those in that trade) that a principal may become aware of a prospective buyer or investor through the broker and then enter into a deal directly, asserting that no compensation is due to the broker because it was not the "procuring cause" in the common law sense. It is unnecessary for present purposes to ascribe any insidious

---

[5] Indeed, the detailed provisions of the Crescent terms sheet submitted by Broadmark cause GlobalNet's contention on that score to border on the frivolous--if it does not in fact cross that border. When major financial investment transactions of an undefined nature (something that both the Agreement and GlobalNet's later agreement with Carey make abundantly plain) are contemplated, and where due diligence requirements must be satisfied in any event before any such transaction can be contemplated, the Crescent terms sheet is typical of the serious initial expression of interest that, when pursued, can ripen into a deal.

7

end-run motivation to GlobalNet, for the Agreement's language is plain indeed: Broadmark's submission of the Crescent terms sheet to GlobalNet fits comfortably into the first of the two alternative definitions of "introduction."

GlobalNet attempts to bolster its position by citing to several Washington cases,[6] but to no avail. While Washington courts do discuss "ready, able and willing" buyers and procuring causes, none does so in the context of a direct one-to-one agreement between the principal and the claimant broker in which the latter claims under an express contractual alternative that does not implicate either of those concepts. Washington courts interpret any fully integrated written contract on its face (DePhillips v. Zolt Constr. Co., 959 P.2d 1104, 1108 (Wash. 1998) and cases cited there), and there can be no dispute here that the Agreement between Broadmark and GlobalNet fits that characterization--that the parties intended it as a final expression of their understandings.[6] Nothing in any case cited

---

[6] Though the text analysis here applies with equal force to the several Illinois cases also cited by GlobalNet, it is unnecessary to discuss them in light of the Agreement's express provision that Washington law applies.

[6] Agreement ¶15 sets out an explicit and all-inclusive integration clause. It is also worth noting that nothing even remotely approaching a contract of adhesion (such as, for example, the typical real estate brokerage agreement) is at issue here--instead the two sophisticated parties negotiated the specific and highly detailed terms of the Agreement (Valles Decl. ¶15).

8

by GlobalNet (or uncovered by this Court's added research) even hints that a Washington court would insert any judicially crafted additional requirement of the type proffered by GlobalNet into an integrated written contract such as the one here.

One other issue bears only brief treatment: GlobalNet's contention (its Mem. 9-10) that Broadmark's Rule 12(c) motion must be rejected because GlobalNet has "denied" that Broadmark introduced Crescent to GlobalNet (Answer ¶¶1, 11, 14 and 15) and that Broadmark performed its obligations under the Agreement (Answer ¶12). On that score GlobalNet fails because it has itself made plain that those denials are not at all factual in nature, but are instead nothing more than legal conclusions based on GlobalNet's now-rejected view of the law. With the conceptual foundation of those asserted "denials" having been removed, the denials themselves collapse into the resulting pit. Such nominal, but now meaningless, disputes cannot and do not stave off judgment on the pleadings.

On the face of the Agreement, then, GlobalNet is liable to Broadmark for a commission for (1) Broadmark's having introduced Crescent as a potential GlobalNet investor and (2) Crescent's later having become an investor in fact. That being so, Broadmark is entitled to judgment as a matter of law on the issue of liability unless GlobalNet can escape that result based on the affirmative defenses it has raised--defenses that also form the

9

predicate for its Rule 56 motion and are therefore dealt with in the next section of this opinion.

## GlobalNet's Motion

GlobalNet raises two arguments to support its summary judgment motion. One--that its introduction of Crescent on December 7, 2000 was not made within the scope of the Agreement because the Agreement was not signed until December 18--was rejected by this Court orally in the course of an October 2, 2001 hearing. Just by way of a brief recapitulation to make this opinion more self-contained, once again the question in that respect involves the meaning and operation of an unambiguous provision of an integrated agreement--this time the description of the triggering event in Agreement ¶1.b: GlobalNet's consummation of any one of a number of financing arrangements (a defined "Transaction") "with a Party or Parties introduced to [GlobalNet] through Broadmark within twenty four (24) months prior to the closing of such transaction." By the express terms of that provision, Broadmark's possible right to compensation for any such GlobalNet Transaction requires a look backward to see (1) whether the other party had indeed been "introduced to [GlobalNet] through Broadmark" and, if so, (2) whether that introduction antedated the <u>closing</u> of the transaction by less than 24 months. Again nothing would justify this Court (or any other) in adding a judge-manufactured condition that the

Broadmark introduction must also have postdated the execution of the Agreement.

What remains, then, is GlobalNet's contention that it is entitled to summary judgment because Broadmark violated the Illinois Loan Brokers Act of 1995 ("Act," 815 ILCS 175/15-1 to 175/15-100[7]) by failing to register as required by the Act, thus rendering the entire agreement void (G. Mem. 18-20).[8] In that regard,, even if it is assumed that the financing Crescent provided qualifies in whole or in part as a loan under the terms of the Act,[9] GlobalNet still faces at least two insurmountable obstacles that preclude a successful invocation of that defense. Neither requires extensive treatment.

For one thing, GlobalNet's argument that Broadmark is

---

[7] Citations to the Act will take the form "Section --," omitting the prefatory "815 ILCS 175/."

[8] Broadmark attempts to dispatch that defense by invoking the "mend the hold" doctrine. This opinion need not explore the applicability or inapplicability of that common law doctrine, for it has never been applied (or even cited) by a Washington court. And in that regard Insolia v. Philip Morris Inc., 216 F.3d 596, 607 (7th Cir. 2000) typifies the frequent reminders from our Court of Appeals that the federal courts' role in diversity cases is not to enter uncharted state law waters in an effort to expand the horizons of the common law.

[9] Act §5.10 defines "Loan" as "any agreement to advance money or property in return for the promise to make payments for the money or property." According to Valles Decl. ¶20, Crescent's funding comprised a $2 million debenture (hence a "loan") and "$215,000 in equity" (normally not within the loan concept), while Crescent's earlier transaction was described in Valles Decl. ¶18 as a "$500,000 investment" (again an unusual label if a true loan were involved).

11

subject to the Act because it attempted to broker a loan for an Illinois resident in Illinois (G. Mem. 19) is an impermissible attempt to avoid GlobalNet's own deliberate contractual joinder in the choice of Washington's substantive law as the source of rules of decision governing the Agreement. GlobalNet provides no caselaw whatever to support that assertion, nor does it (or can it) even argue that some fundamental Illinois public policy requires the parties' choice of law provision to be disregarded or overridden. To the contrary, Illinois courts have enforced choice of law provisions even when the foreign law is arguably inconsistent with an Illinois statute, so long as fundamental public policy considerations are not implicated (see such cases as <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 20 F.3d 713, 719 (7th Cir. 1994), rev'd on other grounds, 514 U.S. 52 (1995)).

Indeed, it would flout the terms of the Act itself to urge that some purported Illinois public policy would be undermined by enforcing the Agreement--the second hurdle that GlobalNet cannot overleap. That is so because even if the Act were potentially applicable, Broadmark would have no obligation to comply with its registration requirement. Section 80(a)(5) specifically exempts from registration "[a]ny person whose fee is wholly contingent on the successful procurement of a loan from a third party and to whom no fee, other than a bona fide third party fee, is paid before the procurement."

12

Although GlobalNet urges that the quoted exemption should be read as requiring that the entity earning the contingent fee must also be the procuring cause of the loan (G. Mem. 19-20), once more it is guilty of seeking to engraft language that just does not appear--this time into a statute rather than into the Agreement.[10] Here the text of the Act says no such thing--all that it requires is that the broker's fee be contingent on the loan being successfully procured. GlobalNet's strained statutory interpretation to the contrary, Broadmark clearly meets the Act's criterion for exemption: Its fee was contingent on GlobalNet's completion of a transaction with a party that Broadmark had introduced.

In sum, both facets of GlobalNet's Loan Brokers Act defense have failed. And with that failure, its Rule 56 motion loses.

## Conclusion

There is no genuine issue of material fact here (something that is confirmed in a way by the very existence of the parties' cross motions), and Broadmark is entitled to judgment as a matter of law. Broadmark's motion for judgment on the pleadings as to liability is granted, while GlobalNet's Rule 56 motion is denied.

With those issues having been resolved, Broadmark is entitled to damages stemming from GlobalNet's breach of the

---

[10] No reported decisions in Illinois have construed any provisions of the Act.

13

Agreement. Because the exact extent of the investments made by Crescent remains unclear from the submissions to this point, the ultimate scope of relief (the compensation due to Broadmark) remains to be determined. Accordingly, a status hearing is set for 8:45 a.m. November 7, 2001 to discuss the necessary procedures and timetable to that end.

　　　　　　　　　　　　　　　　/s/ Milton I. Shadur
　　　　　　　　　　　　　　　　————————————————
　　　　　　　　　　　　　　　　Milton I. Shadur
　　　　　　　　　　　　　　　　Senior United States District Judge

Date:　October 26, 2001